# Ex. 4

The Honorable Richard A. Jones
United States District Court

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MALIK TUCKER and REGINALD WILLIAMS,<br><br>         Plaintiffs,<br><br>vs.<br><br>KING COUNTY, WASHINGTON,<br><br>         Defendant. | No. 2:24-cv-00002-RAJ<br><br>**DECLARATION OF A. DAMI ANIMASHAUN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

I, A. Dami Animashaun, declare as follows:

1. I am admitted to practice before the courts of the State of California and the State of New York, as well as several federal courts. I am admitted to practice in this Court *pro hac vice*. I am one of several attorneys representing the Plaintiffs in this action. I make this statement based on personal knowledge, and if called as a witness could and would testify competently thereto.

2. I am a 2016 graduate of Harvard Law School. Before starting my own firm in 2020, I worked as an attorney at Civil Rights Corps and the American Civil Liberties Union. At both organizations, I litigated civil rights class-action lawsuits challenging unconstitutional policies and practices in municipal criminal legal

Declaration of A. Dami Animashaun
In Support of Plaintiffs' Motion for Preliminary
Approval of Class Action Settlement - 1
(Case No. 2:24-CV-00002-RAJ)

systems, including unconstitutional pretrial detention policies and practices, which are at issue in this case.

3. I have served, or am serving, as lead counsel in the following related civil rights class action lawsuits challenging municipal policies and practices that have led to widespread overdetentions: *Hughes v. Smith Cnty.*, 6:23-cv-00344-JDK (E.D. Tex. 2023) (challenging pattern and practice of failing to timely complete administrative steps attendant to release after detainees are sentenced to time served and resulting in class-wide settlement that is pending approval); *Dunn v. Cuyahoga Cnty.*, 1:23-cv-00364-BMB (N.D. Ohio 2023) (challenging jail's systemic failure to timely release pre-trial detainees); *Camarlinghi v. Santa Clara Cnty.*, No. 5:21-CV-03020-EJD, 2022 WL 17740464 (N.D. Cal. Dec. 16, 2022) (challenging pattern and practice of overdetentions at the Santa Clara County Jail and resulting in a $2.375 million settlement; appointed class counsel). I am also counsel in *Chaplin v. Rowe*, 1:23-cv-00423-WO-JLW (M.D.N.C. 2024), a putative class action challenging North Carolina's implementation of an electronic court management system that caused widespread false arrests and overdetentions.

4. I have also originated and served as lead counsel on the following civil rights class-action lawsuits challenging systemic deficiencies in municipal criminal systems policies: *Russell v. Wayne Cnty.*, 2:20-cv-11094 (E.D. Mich. 2020) and companion case, *Wayne Cnty. Jail Inmates v. Lucas*, No. 71-173217-CZ (challenging conditions of confinement during the COVID-19 pandemic); *Briggs v. Montgomery*, 2:18-cv-02684 (D. Ariz. 2018) (challenging Maricopa County's "pay-to-play" pretrial

Declaration of A. Dami Animashaun
In Support of Plaintiffs' Motion for Preliminary
Approval of Class Action Settlement - 2
(Case No. 2:24-CV-00002-RAJ)

diversion program and resulting in a $2.6 million settlement); *Parga v. Board of County Commissioners of the Cnty. of Tulsa*, 4:18-cv-0298 (N.D. Okla. 2019) (challenging Tulsa County's use of pre-set money bail schedules to detain people arrested for misdemeanors and felonies); *Daves v. Dallas Cnty.*, 3:18-cv-00154 (N.D. Tex. 2018) (same).

5. My work has been widely covered in the press. For example:

Bret Jaspers, *Former East Texas Inmates Accuse Smith County of Keeping them Longer than their Sentences* (KERA News (PBS and NPR for North Texas), July 18, 2023), https://www.keranews.org/news/2023-07-18/former-east-texas-inmates-accuse-smith-county-of-keeping-them-longer-than-their-sentences.

Adam Ferrise, *Cuyahoga County Faces Class-Action Lawsuit for Keeping Some 300 People in Jail After they were Ordered to be Released* (Cleveland.com, Feb. 24, 2023), https://www.cleveland.com/cuyahoga-county/2023/02/cuyahoga-county-faces-class-action-lawsuit-for-keeping-some-300-people-in-jail-after-they-were-ordered-to-be-released.html.

David McAfee, *Santa Clara County Sees $2.4 Million Settlement Finally Approved* (Bloomberg Law, Dec. 19, 2022), https://news.bloomberglaw.com/litigation/santa-clara-county-sees-2-4-million-settlement-finally-approved.

Shaila Dewan, *Caught with Pot? Get-Out-of-Jail Program Comes With $950 Catch* (New York Times, Aug. 24, 2018), https://www.nytimes.com/2018/08/24/us/marijuana-diversion-program-maricopa-arizona.html.

Corey Jones, *Tulsa County Operates Unconstitutional, Wealth-Based Detention Scheme, Federal Lawsuit Claims* (Tulsa World, June 6, 2018), https://tulsaworld.com/news/local/tulsa-county-operates-unconstitutional-wealth-based-detention-scheme-federal-lawsuit-claims/article_97c15538-1553-5037-83e4-6ff50cbb9483.html.

6. I have been retained by national nonprofit legal organizations and plaintiffs-side law firms to consult, advise, or otherwise participate in civil rights lawsuits concerning police misconduct and unconstitutional policies and practices in

municipal criminal legal systems. I have spoken at conferences, universities, law schools, and elsewhere about various civil rights related topics.

7. My co-counsel possess substantial experience in litigating civil rights cases and working within the criminal legal system. Their backgrounds include representing individuals in complex constitutional litigation and in criminal proceedings, including in King County courts where Settlement Class Members received delayed probable cause hearings. Additionally, they have advocated for system reforms in criminal legal systems and engaged directly with impacted communities. This collective expertise has been instrumental in the effective investigation, development, and litigation of the claims in this case.

**Ezra Ritchin** graduated from Yale Law School in 2023. He is currently serving as counsel in the following civil rights lawsuits: *Hilgart-Griff v. Regents of the University of Michigan*, 2:24-cv-13425 (E.D. Mich. 2024) (putative class action challenging discriminatory and unconstitutional disciplinary practices); *Boosinger v. Regents of the University of California*, 25STCV08969 (L.A. Super. Ct. 2025) (mass action challenging discriminatory practices and excessive force against protesters); *Hakim v. Regents of the University of Michigan*, 2:25-cv-11265 (E.D. Mich. 2025) (challenging unconstitutional and retaliatory labor practices at the University of Michigan). Before practicing law, Ezra served as the Director of the Bronx Freedom Fund and the National Director of Operations of The Bail Project. In these roles, he spent over five years working in jails and criminal courts across the country, assisting pretrial detainees around their first appearances and probable cause determinations, and working with the sorts of databases and records at the center of this lawsuit.

**Shakeer Rahman** graduated from Harvard Law School in 2015. Before starting his own law firm in 2021, Shakeer worked as law clerk to Justice Mariano-Florentino Cuéllar on the California Supreme Court and to Judge Beverly Martin on the U.S. Court of Appeals for the Eleventh Circuit and then as an Impact Litigation Attorney at The Bronx Defenders and as a Senior Staff Attorney at The Bail Project. Since 2023, Shakeer has also taught at UCLA School of Law as a Lecturer in Law. Shakeer was recognized this year by Super Lawyers magazine as a "Rising Star" in the field of Civil Rights. This recognition is awarded to the top 2.5% of local attorneys in a given field.

Declaration of A. Dami Animashaun
In Support of Plaintiffs' Motion for Preliminary
Approval of Class Action Settlement - 4

(Case No. 2:24-CV-00002-RAJ)

Shakeer currently serves as counsel for putative classes in B*lack Lives Matter Los Angeles v. City of Los Angeles*, No. 2:20-cv-05027 (C.D. Cal. 2020) (challenging excessive force and unlawful arrests during racial justice protests); *Akili v. City of Los Angeles*, No. 22STCV00934 (L.A. Super. Ct. 2022) (challenging excessive force during racial justice protests); and *Gabbert v. Josephine County*, No. 1-23-CV-01434 (D. Or. 2023) (challenging unconstitutional takings of home equity by Oregon counties). He previously served as counsel for certified classes in *Ligon v. City of New York*, 12-cv-2274 (S.D.N.Y. 2012) (challenging stop-and-frisk policing tactics in private apartment buildings), *Trowbridge v. Cuomo*, 16-cv-3455 (S.D.N.Y. 2016) (challenging systemic delays in misdemeanor trials), and *R.C. v. City of New York*, No. 153739/2018 (N.Y. Sup. Ct. 2018) (challenging use of sealed arrest records in data-driven policing programs), as well as counsel for a putative class in *P.L. v. U.S. Immigration and Customs Enforcement*, No. 19-cv-1336 (S.D.N.Y. 2019) (challenging ICE's refusal to bring detained immigrants to in-person court hearings).

**Sadé Smith** graduated from University of Illinois College of Law in 2011. Prior to starting her own firm in 2019, Sadé was a public defender in King County for 7 years, representing indigent clients. During her time as a public defender in misdemeanor practice, she handled 400 cases per year. In felony practice she handled 150 cases per year. Sadé's current practice includes family law, personal injury, criminal defense, and involuntary treatment act cases, in municipal, district, superior, and federal court. She is also a Criminal Justice Act (CJA) panel attorney for the Western District of Washington. During her career she has prepared for and litigated numerous cases, submitted amicus briefing to the Washington State Supreme Court, represented clients on appeal, and tried over 50 jury trials.

**Michael Zhang** graduated from Harvard Law School in 2018. Before starting his own firm in 2019, he worked as an attorney at the Metropolitan Public Defender of Portland, Oregon. His current practice consists of personal injury, corporate transactions, criminal record expungement, and developing legal technologies – including RecordSponge, which won the 2020 Oregon State Bar Technology & Innovation Award.

8.    Class Members in this case would likely never have received compensation for the alleged overdetention if Plaintiff's counsel had not invested substantial resources at the investigation stage of this case—with no promise of any recovery down the road—to gather evidence of the County's practices, identify Class Members, and locate an adequate Class Representative. Class Members did not know

Declaration of A. Dami Animashaun
In Support of Plaintiffs' Motion for Preliminary
Approval of Class Action Settlement - 5

(Case No. 2:24-CV-00002-RAJ)

they had been harmed; thus, they would have been unlikely to contact an attorney to pursue individual cases despite the gravity and strength of their Constitutional claims.

9. Prior to initiating this case, my co-counsel and I conducted an extensive investigation over the course of nearly a year to uncover the unconstitutional policies and practices at issue. This investigation posed unique challenges, as the relevant information was not all publicly accessible. As a result, we were required to submit public records requests and carefully analyze months of data to determine whether the County maintained a policy or practice of routinely denying arrested individuals timely probable cause hearings. During this period, Plaintiffs' counsel also interviewed putative class members and community stakeholders to gain a deeper understanding of the policies and practices in question.

10. Plaintiff's Counsel spent months identifying, searching for, and locating harmed Class Members who had changed their addresses numerous times since their release from jail; informing Class Members who did not know they had been harmed about their rights; and retaining Class Representatives. This process presented considerable difficulty, and, on several occasions, Plaintiff's Counsel thought that they would not be able to access the information necessary to file this case and seek justice for the Class.

11. Before filing the case, Plaintiffs' counsel also performed substantial legal research on the possible constitutional, statutory, and common law claims that could be raised, as well as defenses to those claims. We also conducted an extensive

Declaration of A. Dami Animashaun
In Support of Plaintiffs' Motion for Preliminary
Approval of Class Action Settlement - 6
(Case No. 2:24-CV-00002-RAJ)

1  review of class action cases in this Circuit and other jurisdictions presenting similar issues.

12. On April 8, 2024, Plaintiffs' counsel filed the First Amended Complaint (ECF 20). Following the County's filing of its Answer on April 22, 2024, the parties commenced fact discovery. Between May and December 2024, Plaintiffs' counsel completed written discovery, which involved requesting and reviewing thousands of pages of ESI and physical documents related to the challenged policies, as well as analyzing voluminous court and jail data regarding the timing of thousands of probable cause determinations made during the class period.

13. In December 2024, as written discovery neared completion, the parties conferred and agreed that pursuing settlement would be in the best interests of all involved. (*See* ECF 34 ¶¶ 3-4.) Following this agreement, Plaintiffs' counsel conducted two depositions of policy-making officials. But the majority of the five-month period between December 2024 and the April 2025 mediation was devoted to identifying and analyzing the data necessary to determine the scope of the Settlement Class and to ascertain the identities of its individual members.

14. Over the course of the investigation and 19-month litigation, Plaintiffs' counsel devoted over 200 hours to rigorous analysis to identify putative class members and narrow the dataset to the relevant universe of individuals from among more than 65,000 jail bookings during the Class Period. This effort required meticulous review and cross-referencing of individual court documents in thousands of cases to determine the timing of probable cause determinations—information that

Declaration of A. Dami Animashaun
In Support of Plaintiffs' Motion for Preliminary
Approval of Class Action Settlement - 7
(Case No. 2:24-CV-00002-RAJ)

could not be extracted from the available data and could only be obtained by examining physical court records.

15. This labor-intensive process was critical to accurately identifying and confirming class membership. Although Plaintiff's counsel possesses substantial experience working with criminal justice datasets, to enhance efficiency, minimize unnecessary effort, and reduce the number of cases requiring manual review, they sought and obtained pro bono consultation from two individuals, each with over a decade of experience in computer programming and data analysis.

16. This data analysis and manual document review continued even after the resolution of the case at the parties' mediation on April 23, 2025, as it was necessary to further identify members of the Settlement Class.

17. The settlement process has also involved informal data requests and conferrals with the County regarding relevant records; legal research and the drafting of settlement correspondence exchanged with the County and submitted to the Honorable Paris J. Kallas (Ret.); participation in a full-day settlement conference facilitated by Judge Kallas; drafting of the Settlement Agreement, Preliminary Approval Motion, and accompanying documents.

18. As of July 31, 2023, the date of the filing of the Preliminary Approval Motion, Plaintiffs' counsel has devoted approximately 700 hours to this case, resulting in a lodestar of $339,600.00. Based on Plaintiffs' counsel's prior experience administering class-action settlements, counsel expects to devote several dozen additional hours—at minimum—to this case through the completion of settlement

Declaration of A. Dami Animashaun
In Support of Plaintiffs' Motion for Preliminary
Approval of Class Action Settlement - 8
(Case No. 2:24-CV-00002-RAJ)

administration. Additionally, Plaintiffs' counsel have incurred $8,108.55 in costs during this case, including expenses related to depositions, mediation, filing fees, and pro hac vice applications. Plaintiffs' counsel total invoice to date is thus: **$347,708.55**.

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| A. Dami Animashaun | 170 | $800.00 | **$136,000.00** |
| Ezra Ritchin | 431 | $350.00 | **$150,850.00** |
| Michael Zhang | 74 | $500.00 | **$37,000.00** |
| Sadé Smith | 22 | $600.00 | **$13,200.00** |
| Shakeer Rahman | 3 | $850.00 | **$2,550.00** |
| **Total** | | | **$339,600.00** |

19.   The rates charged by our attorneys and legal staff are reasonable and within the range of appropriate market rates charged by attorneys with comparable experience levels for litigation of a similar nature.[1]

20.   Three years ago, in 2022, the Northern District of California found that my rate of $650.00 at that time was reasonable and commensurate with those charged by attorneys with similar experience. *See Camarlinghi v. Santa Clara Cnty.*, No. 5:21-CV-03020-EJD, 2022 WL 17740464, at *6 (N.D. Cal. Dec. 16, 2022). My current higher rates reflect the additional three years of experience that I have gained since then. My rate is also consistent with the billable rate that the Laffey

---

[1] Out-of-district counsel have used their local billing rates in calculating the lodestar. The Ninth Circuit has recognized that "rates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform due to a lack of the degree of experience, expertise, or specialization required to handle the case properly." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Here, Plaintiffs' counsel believe that the policies and practices challenged in this case persisted for years without a systemic legal challenge. The experience and expertise of out-of-district counsel were necessary to investigate and litigate this matter effectively, and thus the use of their local rates is appropriate.

Declaration of A. Dami Animashaun
In Support of Plaintiffs' Motion for Preliminary
Approval of Class Action Settlement - 9
(Case No. 2:24-CV-00002-RAJ)

Matrix[2] accords to people who graduated from law school in May 2016, nine years ago.

21. Because of the risks, uncertainty, and significant investigative time and resources invested in this case with no guarantee of compensation or recovery, Plaintiff's counsel believe that a multiplier of the loadstar is warranted. *See Blum v. Stevenson*, 465 U.S. 866, 900 (1984) ("risk of nonpayment required an upward adjustment to provide reasonable fees"). But because Plaintiff's Counsel will incur substantial additional hours throughout the settlement approval and claims administration processes, our attorneys' fees request will likely be equal to our loadstar without a multiplier.

I declare under penalty of perjury that the foregoing is true and correct. Executed this July 31, 2025, at New York, NY.

*/s/A*. Dami Animashaun

---

[2] The Laffey Matrix is a fee schedule used by many United States courts for determining the reasonable hourly rates for attorneys' fee awards under federal fee-shifting statutes. The Matrix can be found at http://www.laffeymatrix.com/see.html.

Declaration of A. Dami Animashaun
In Support of Plaintiffs' Motion for Preliminary
Approval of Class Action Settlement - 10
(Case No. 2:24-CV-00002-RAJ)